IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HARSHKUMAR PATEL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>　　　　　Defendant. | 8:25CV59<br><br>MEMORANDUM<br>AND ORDER |

　　　Plaintiff Harshkumar Patel ("Patel") is an Indian national who has resided in the United States for several years. Patel was the victim of an armed robbery in January 2024. On October 24, 2024, he filed an I-918, Petition for U Nonimmigrant Status ("I-918 Petition") with United States Citizenship and Immigration Services ("USCIS"). *See Caballero-Martinez v. Barr*, 920 F.3d 543, 545 (8th Cir. 2019) (explaining a U Visa "is a type of non-immigrant visa available to crime victims who assist law enforcement"); 8 U.S.C. §§ 1101(a)(15)(U)(i), 1184(p). That day, Patel also filed a Form I-765 Application for Employment Authorization ("I-765 Form").

　　　He has since been waiting for a determination. Patel filed suit (Filing No. 1) against the Director of the USCIS (the "Director")[1] on February 10, 2025. According to his *pro se* complaint,[2] he has been "without a bona fide determination, work authorization, or deferred action" for months following the submission of his I-918 Petition and I-765 Form.

---

[1]Angelica Alfonso-Royals is currently serving as the Acting Director of the USCIS.

[2]As other judges of this Court have recognized, Patel's complaint is just one of over one-hundred nearly-identical *pro se* form complaints that have been filed in this Court in the past few months. *See Monroy v. Director, USCIS*, No. 8:25CV74, 2025 WL 1267767 at *1-*2 (D. Neb. May 1, 2025).

He asserts that delay is unlawful. Patel's complaint sets forth one cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, claiming the circumstances surrounding USCIS's failure to act in his case so far constitutes "unreasonably delay . . . warrant[ing] mandamus" relief, *Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984). He specifically asks the Court to order the USCIS "to make *bona fide* determinations and decisions on the pending work authorization applications within 14 days."

Now before the Court is the Director's March 27, 2025, Motion to Dismiss (Filing No. 5) Patel's complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In her facial attack on the Court's jurisdiction, the Director argues the Court is barred from considering Patel's claim under 8 U.S.C. § 1252(a)(2)(B)(ii). *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (explaining a court "must distinguish between a facial attack and a factual attack on jurisdiction" (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990))). That subsection provides that "no court shall have jurisdiction to review . . . any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in" their discretion. 8 U.S.C. § 1252(a)(2)(B)(ii). The Director avers the USCIS's decisions concerning Patel's request for a bona fide determination ("BFD") and employment authorization documents ("EAD")—including over "the precise *pace* of adjudicating" those requests—are discretionary and, thus, not subject to review.

On May 1, 2025, Patel filed a belated response (Filing No. 8) opposing dismissal. *See* NECivR 7.1(b)(1)(B) (generally giving a party fourteen days to oppose a motion to dismiss). Somewhat confusingly, and contrary to his complaint, Patel argues he only challenges "BFD delays" not "BFD EAD delays." The Director moved to strike (Filing No. 9) his response a week later based on it being untimely and failing to include a requisite certificate of compliance. *See* NECivR 7.1(d)(4) (requiring the author of a brief to certify the number of words the brief contains and the role of any generative artificial intelligence

programs in its preparation), (5) ("Any brief not in compliance with this subsection may be stricken, with or without further notice, in the sole discretion of the court."). Patel opposed that motion as well (Filing No. 13).

The Court held a hearing with the parties on May 22, 2025. At that time, Patel informed the Court—as he did in his brief opposing the government's motion to strike—that he did not receive a copy of the government's motion to dismiss until the deadline for a response had passed.[3] Based on Patel's explanation, the Court informed the parties it

---

[3]Patel's explanation addressed other questions the Court had over the origins and circumstances of these "*pro se*" filings. As he explained, the form complaint utilized by Patel and over one-hundred other litigants was prepared and sold by Pro Se Pro, a company based in Isle of Palms, South Carolina. Some of the Court's initial concern over these filings came from the fact that those pleadings all provided the same address in Dover, Delaware, for the service of future filings despite the fact that each plaintiff provided their home address in their complaint. Given what was discussed at the hearing, it seems the service of documents to that address likely caused the plaintiffs' delays in responding to pending motions to dismiss.

While those questions were answered, new ones arose. To start, although the use of form complaints may be appropriate at times, so-called "ghostwriting" by an attorney without attribution is a violation of Nebraska Rule of Professional Conduct § 3-501.2(c). *See* NEGenR 1.8(a) (adopting the Nebraska Rules of Professional Conduct "as the rules of this court"). That rule also applies to Pro Se Pro's preparation of substantive responses to the Director's motions to dismiss.

One of the apparent founding members of Pro Se Pro is an attorney who has appeared in this Court in similar cases. And as an attorney admitted to practice in this Court, he is bound by the Nebraska Rules of Professional Conduct. *See id.*; *see also* S.C. App. Ct. R. 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assist another in doing so."). On the other hand, if non-attorney employees of Pro Se Pro have prepared the detailed responses to the Rule 12(b)(1) motions filed in these cases, that practice would likely raise unauthorized-practice concerns. *See, e.g.*, Neb. Sup. Ct. R. § 3-1001 (defining the "practice of law" as "the application of legal principles and judgment with regard to the circumstances or objectives of another" including the "drafting . . . of legal documents which affect the legal rights" of a person).

3

intended to deny the Director's motion to strike. The Court further considered both parties' arguments following the hearing.

In ruling on the Director's facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6). That means the Court accepts all of the well-pleaded factual allegations in Patel's complaint as true and only considers the information in the complaint, "materials that are 'necessarily embraced by the pleadings[,] and exhibits attached to the complaint'" *Id.* (quoting *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012)).

"The APA's right to judicial review," including in cases of unreasonable delays, "does not apply when 'statutes preclude judicial review.'" *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024) (quoting 5 U.S.C. § 701(a)(1)). As the Court has explained thoroughly in previous immigration-delay cases, "federal courts have an important role to play under" the Immigration Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, but "'Congress has sharply circumscribed judicial review of the discretionary-relief process' under [8 U.S.C.] §§ 1182 and 1252(a)(2)(B)(ii)." *Boulay v. Jaddou*, 700 F. Supp. 3d 753, 757 (D. Neb. 2023) (quoting *Patel v. Garland*, 596 U.S. 328, 332 (2022)). The "presumption favoring judicial review of administrative action" informs the proper interpretation of those statutes. *Kucana v. Holder*, 558 U.S. 233, 251 (2010) (interpreting the scope of 8 U.S.C. § 1252(a)(2)(B)(ii)). Only where there is "'clear and convincing evidence' to dislodge the presumption" does the Court interpret the jurisdiction-stripping statutes to bar judicial review of a claim under the APA. *Id.* at 251-52.

---

Despite its concerns, the Court will fully consider both parties' briefs and rule on the motion to dismiss based on those filings. However, it advises the lay and lawyer members of Pro Se Pro that they should heed the prohibitions of the Nebraska Rules of Professional Conduct noted above.

4

The Court has applied these principles in finding it lacks jurisdiction over claimed delays in adjudicating I-601 Applications for Waivers of Grounds of Inadmissibility and I-601A Applications for Waivers of Unlawful Presence. *See Boulay*, 700 F. Supp. 3d at 755-58; *Beltran v. Miller*, 699 F. Supp. 3d 785, 791-94 (D. Neb. 2023). It has not always shared the government's at-times expansive view of the scope of the INA's jurisdiction-stripping provisions. *See Boulay*, 700 F. Supp. 3d at 757 (opining that "the word 'judgment' under § 1252(a)(2)(B)(i)" could likely not "bear all the weight" the USCIS placed on it); *Beltran*, 699 F. Supp. 3d at 793 (explaining how the government's "broad interpretation of the statutory language" in that case seemed "to be a stretch"). But with respect to those discretionary forms of relief, it found certain provisions to be broad enough to encompass the USCIS's prioritization of certain applications for relief and decisions over how to "allocate its resources," actions which affected the delays in those cases. *Beltran*, 699 F. Supp. 3d at 793-94; *see also Chalamalesetty v. Jaddou*, No. 4:22-CV-3182, 2023 WL 6387976, at *3 (D. Neb. Sept. 29, 2023) (concluding the USCIS's "decision to do one thing, at a particular pace, instead of another thing is a discretionary decision insulated from judicial review").

Looking at the statute that governs Patel's claim, the same is true here. *See Kucana*, 558 U.S. at 237 (determining the words "specified under this subchapter" in § 1252(a)(2)(B) "refer to statutory, but not to regulatory, specifications"); *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016) ("If the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable." (quoting *Abdelwahab v. Frazier*, 578 F.3d 817, 821 n.6 (8th Cir. 2009))). Section 1184(p)(6) provides that the Secretary of Homeland Security (the "Secretary") "may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." That language stands in stark contrast to the mandatory "shall" associated with other duties of the government under the U-Visa program. *See* 8 U.S.C. § 1184(p)(3) ("[T]he Attorney General shall, during the period those aliens are in lawful temporary resident status under that subsection,

provide the aliens with employment authorization."), (4) ("In acting on any petition filed under this subsection, the consular officer or the Attorney General, as appropriate, shall consider any credible evidence relevant to the petition."); *see also Nken v. Holder*, 556 U.S. 418, 430 (2009) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

The permissive language of § 1184(p)(6)—read in this context—makes clear that the decision to grant EADs to an individual with a pending I-918 Petition is a matter generally committed to the Secretary's discretion. *See Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (explaining that "'may' suggests discretion" but not necessarily "unlimited discretion"); *Thigulla*, 94 F.4th at 775 (concluding the Attorney General was given "discretionary authority" since 8 U.S.C. § 1255(a) stated they "'may' adjust [one's] status and 'may' prescribe regulations" in their discretion); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 367-70 (4th Cir. 2021) (opining that the Secretary need not even implement the temporary work-authorization adjudications under § 1184(p)(6)). The Court joins the other judges of this Court in reaching that conclusion. *See Barot v. Director, USCIS*, No. 8:25CV101, 2025 WL 1208968 at *2 (D. Neb. Apr. 25, 2025) (Gerrard, J.); *Monroy*, 2025 WL 1267767 at *8-9 (Buescher, J.); *Reyes Olmos v. USCIS*, No. 4:23CV3191, ___ F. Supp. 3d ___, ___, 2025 WL 1582941 at *1-*2 (D. Neb. May 15, 2025) (Nelson, J.); *Sonani v. Director, USCIS*, No. 8:25CV68, 2025 WL 1489563 at *4-*5 (D. Neb. May 23, 2025) (Bataillon, J.).

Patel attempts to work around this patent discretion by asserting his complaints lie not with delays to the adjudication of the EAD itself but with delays to the BFD that precedes it. That's tricky. For one, the suggestion that Congress intended for the first step of a wholly discretionary process to be nondiscretionary seems logically suspect. Further, "[a]lthough the term 'bona fide application' appears in § 1184(p)(6), the statute does not

6

define 'bona fide,' 'bona fide application,' or otherwise dictate the process that the Secretary uses to determine whether to grant work authorization." *Monroy*, 2025 WL 1267767 at *4; *see also Barrios Garcia v. DHS*, 25 F.4th 430, 443 (6th Cir. 2022) (observing that "the BFD process is not found in a regulation or a statute"). A reasonable application of controlling authority guides that—under these circumstances—regulations and agency policies may not carve out the discretion otherwise granted to the Secretary under § 1184(p)(6) in implementing this EAD process. *See Rajasekaran*, 815 F.3d at 1099; *cf. Kucana*, 558 U.S. at 237. *But cf. Barrios Garcia*, 25 F.4th at 443 (finding § 1252(a)(2)(B)(ii) does not cover the "nonstatutory BFD process" and crediting the agency's manual in finding the BFD EAD process to be nondiscretionary).

Because § 1184(p)(6) gives the Secretary discretion over the EAD program for U-Visa applicants, the Court is barred by § 1252(a)(2)(B)(ii) from reviewing "decision or action" regarding that program. As in other cases, that prohibits review of certain decisions of the USCIS that affect the pace with which it issues BFDs and EADs to individuals waiting for a U-Visa adjudication. *See Thigulla*, 94 F.4th at 775; *Boulay*, 700 F. Supp. 3d at 757-58. The INA therefore strips this Court of jurisdiction over the particular type of claim Patel raises in his complaint.

Like in the other immigration-delay cases that have come before the Court, this conclusion is not made lightly. *See Beltran*, 669 F. Supp. 3d at 795. The value of "[c]itizenship and lawful residency in the United States" and the privileges that come with it remain manifest. The Court is acutely aware of how these delays negatively affect Patel and other litigant's employment opportunities and well-being, as well as those of their families. Still, "policy concerns cannot trump the Court's interpretation of the statutory text" of § 1184(p)(6). *Id.* (quoting *Patel*, 596 U.S. at 346). Because Congress provided the Court no role to play in moving Patel's applications along,

IT IS ORDERED:

1. The Director of United States Citizenship and Immigration Services's Motion to Strike (Filing No. 9) is denied.
2. The Director's Motion to Dismiss (Filing No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.
3. Plaintiff Harshkumar Patel's complaint (Filing No. 1) is dismissed without prejudice.
4. Patel's Motion for Partial Summary Judgment (Filing No. 17) is denied as moot.
5. A separate judgment will issue.

Dated this 11th day of June 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge